# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| JOSEPH FRANK THIEME,<br><br>　　Petitioner,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　Respondent. | Case No.: 2:17-cv-00198-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending is Petitioner Joseph Frank Thieme's Petition for Review[1] (Dkt. 1), appealing the Social Security Administration's final decision finding him not disabled and denying his claim for disability insurance benefits and supplemental security income.[2] *See generally* Pet. for Review (Dkt. 1). This action is brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. ADMINISTRATIVE PROCEEDINGS

On May 6, 2013, Joseph Frank Thieme ("Petitioner") protectively applied for Title II disability and disability insurance benefits and for Title XVI supplemental security income. (AR 13.) Petitioner alleged disability beginning May 3, 2013. (*Id.*) His claims were denied initially on August 2, 2013 and then again on reconsideration on September 20, 2013. (*Id.*) On September

---

[1] The pleading was titled and framed as a complaint, but is more properly treated as a petition for review, as it seeks review of a final agency action. It will be referred to herein as a petition for review.

[2] Nancy A. Berryhill became the acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted in as the Respondent in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

MEMORANDUM DECISION AND ORDER – 1

26, 2013, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (*Id.*) Petitioner appeared and testified at an initial hearing held on July 21, 2015 before ALJ R.J. Payne in Spokane, Washington. (*Id.*) Based in part on the testimony of impartial medical expert Minh D. Vu, M.D., Petitioner was sent for a consultative examination. (*Id.*) Petitioner then appeared and testified at a supplemental hearing on October 30, 2015. (*Id.*) Impartial orthopedic medical expert Anthony E. Francis, M.D., and impartial vocational expert Daniel McKinney, Sr., appeared and testified at the supplemental hearing. (*Id.*)

On December 1, 2015, the ALJ issued a Decision denying Petitioner's claim, finding that Petitioner was not disabled within the meaning of the Social Security Act. (AR 24.) Petitioner timely requested review from the Appeals Council on or about December 17, 2015. (AR 7.) On April 5, 2017, the Appeals Council denied Petitioner's Request for Review, making the ALJ's decision the final decision of the Commissioner of Social Security. (AR 1.)

Having exhausted his administrative remedies, Petitioner timely filed the instant action, arguing that "[t]he conclusions and findings of fact of the [respondent] are not supported by substantial evidence and are contrary to law and regulation." Pet. for Review 1 (Dkt. 1). Petitioner challenges the sufficiency of the evidence on which the ALJ relied, arguing that the ALJ should have concluded that he was disabled. *See generally* Pet'r's Br. (Dkt. 15). Petitioner asks for reversal and a holding that he was disabled for a certain closed period. *Id.* at 12. He also asks for remand for the ALJ to decide whether he continues to be disabled from the end of the closed period onward. *Id.*

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th

Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance (*Trevizo*, 871 F.3d at 674), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight must be given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent

with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## III. DISCUSSION

### A. Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of his medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner has not engaged in substantial gainful activity since May 3, 2013, the alleged onset date. (AR 15.)

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an

individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that cause no more than minimal limitation on an individual's ability to work. SSR 96-3p, 1996 WL 374181 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner has the following severe impairments: "diabetes mellitus, type II; bilateral below the knee amputations; and hypertension." (AR 15.)

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal a listed impairment, his claim cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the ALJ found that Petitioner does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR 16–17.)

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work he

performed within the last 15 years or 15 years prior to the date that disability must be established, as long as the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner has the RFC:

> to perform a range of sedentary work as defined in 20 CFR 40.1567(a) and 416.967(a). The claimant can lift 20 pounds occasionally and lift or carry 10 pounds frequently; can sit 6 hours and stand and walk 2 hours total, in any combination, in an 8 hour workday with normal breaks; can occasionally climb ramps and stairs, balance, stoop, and crouch, but cannot crawl, kneel, or climb ladders, ropes, and scaffolds; cannot be exposed to unprotected heights, and should avoid concentrated exposure to extreme cold, heavy industrial vibrations, and hazardous machinery with moving parts.

(AR 17.) The ALJ further found that Petitioner is unable to perform any of his past relevant work. (AR 22.)

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014). If the claimant is able to do such other work, he is not disabled; if the claimant is not able to do other work and meets the duration requirement, he is disabled. Here, the ALJ found that Petitioner's RFC is compatible with work as a "production assembler," "electronics worker," "order clerk, food and beverage," "table worker," or "call-out operator." (AR 24.) The ALJ further found that these jobs exists in significant numbers in the national economy. (*Id.*)

Based on the finding that Petitioner could perform jobs that exist in significant numbers in the national economy, the ALJ ultimately concluded that Petitioner "has not been under a

disability, as defined in the Social Security Act, from May 3, 2013, through the date of this decision." (*Id.*)

**B.     Analysis**

Petitioner contends that he met the requirements of Listing 1.05B of the official listings, so it was error for the ALJ to find he was not disabled. Implicit in this argument is an assertion the ALJ did not rely on substantial evidence in finding him not disabled. Notwithstanding the difficult circumstances in which Petitioner finds himself, on review the Court finds the ALJ did rely on substantial evidence and therefore under applicable law, the Petitioner's petition must be denied.

SSA regulations provide that "[t]he Listing of Impairments . . . describes for each of the major body systems impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). Listing 1.05 addresses amputations. 20 C.F.R. Part 404, Subpart P, app. 1, 1.05. To satisfy the requirements of Listing 1.05B, Petitioner must show amputation of "[o]ne or both lower extremities at or above the tarsal region, with stump complications resulting in medical inability to use a prosthetic device to ambulate effectively, as defined in 1.00B2b, which have lasted or are expected to last for at least 12 months." As indicated, the regulations provide a definition of "to ambulate effectively":

> b. What We Mean by Inability To Ambulate Effectively
> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

MEMORANDUM DECISION AND ORDER – 7

> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

Listing 1.00B2b.

Petitioner has undergone bilateral below-the-knee amputations on May 6, 2013. (AR 18; Pet'r's Br. 7 (Dkt. 15).) Petitioner refers to "weird, confusing medical records" (Pet'r's Br. 3) that later indicated Petitioner still had both of his legs, but the ALJ's decision states the correct date of the amputations and does not appear to rely on the records Petitioner calls out as inconsistent. Regardless, because of the amputations, Listing 1.05B is clearly implicated. The only issue in this case is whether Petitioner met the requirements for that listing.

> The ALJ found that Petitioner
>
> was able to ambulate independently and effectively using prosthetics within one year after his amputations. His amputations occurred in May 2013 and he was independent on prosthetics by August 2013. While the claimant now reports his prosthetics no longer fit, this occurred well over a year after he was fitted for the prosthetics and there has been no evidence of stump complications.

(AR 17.) Listing 1.05B requires "stump complications resulting in medical inability to use a prosthetic device to ambulate effectively." Given that the ALJ found (1) no evidence of stump complications and (2) that Petitioner was able to ambulate effectively, the ALJ's decision must be upheld if substantial evidence supports such findings. *Treichler*, 775 F.3d at 1098.

The Court is convinced that these ALJ findings are supported by substantial evidence. The ALJ clearly was aware of the circumstances facing Petitioner as a result of the difficulty

caused by the fit of his prosthetics. The ALJ carefully surveyed the factual record and the applicable law. The ALJ's decision is lengthy, detailed, and thorough. It contains an extensive discussion of Petitioner's medical history, including a review of records shortly after his amputations. (AR 18–22.) Of particular note are the following portions of the ALJ's decision:

> The claimant was hospitalized on May 5, 2013, with a diagnosis of severe diabetic foot ulcers with secondary gas gangrene and osteomyelitis. Mark Hernandez, M.D., reported at that time the claimant had type II diabetes mellitus with a history of refusing to take his medications or attempt to control his diabetes. (Exhibit lF) He underwent bilateral below the knee amputations on May 6, 2013. (Exhibit 2F)
>
> By May 29, 2013, Edward DeTar, M.D., indicated the claimant's stumps were clean, dry, intact, and completely healed. The claimant had no pain and his blood sugars were much easier to control now that his infections were gone. He was ready to start his prosthetic training. (Exhibit 3F)
>
> Richard Allen, CP, reported on July 12, 2013, the claimant was tired of using a wheelchair and was anxious to learn how to walk with prostheses. The claimant's limbs "looked great" and he was casted over liner molds for bilateral prosthetics. (Exhibit 4F)
>
> On August 13, 2013, Brett O'Connor, FNP, reported the claimant's stumps were well healed and the claimant could get up and down from a seated position although he needed a countertop or something to hang onto for stability. He further indicated the claimant had a very good prognosis to be independent in walking when he had his permanent prostheses and had physical and occupational therapy. (Exhibits 5F/1; 6F/2) The claimant was otherwise doing well with his diabetes and hypertension now stable. (Exhibit 5F/3) He was observed to walk 30 steps with minimal assistance from the bars and he reported standing at home. (Exhibit l lF/5)
>
> Melissa Rouse, LPN, reported shortly thereafter the claimant was mostly independent in all his activities of daily living and was able to transfer without prosthetics, and he was independent with bed mobility. (Exhibit 8F/10) He underwent physical therapy from August 15 to August 31, 2013, and Helena Albert, PT, reported on discharge the claimant had reached a safe level of gait with bilateral forearm. He was able to safely complete cooking and washing laundry with stand by assistance and complete toileting tasks utilizing adaptive equipment at a modified independent level. He was discharged to home to work on home exercises. (Exhibit 6F/32, 38)
>
> In September 2013, Mr. Allen reported the claimant had learned to walk up and down ramps as well as uneven surfaces like the bumpy grass. He was using his forearm crutches and he had used his wheelchair very little. He even indicated the claimant had surpassed the ambulatory guidelines in a very short amount of time. (Exhibit l lF/7-8) The claimant was also noted to report improvement with each adjustment made and on September 18, 2013, he reported walking one-quarter of a mile a day. He reported being pleased with his prosthetics and was feeling great in

> January 2014. He even reported shoveling his driveway and maintaining his house. On July 28, 2014, Mr. Allen again noted the claimant had surpassed their expectations for ambulating in prosthetics. (Exhibit 1 1F/8-10)

(AR 18–19.) A review of the cited records indicates the ALJ faithfully represented their contents and significance.[3]

Petitioner's own testimony supports the ALJ's finding. At both the initial hearing and the supplemental hearing, Petitioner walked into the hearing room on his prosthetics. (AR 37, 82–83.) He said that, using his prosthetics, by "June [2014] I could walk with only one crutch." (AR 51.) He also denied having problems with ulcers or his stumps[4] in the first year after his amputations. (AR 52.)

Petitioner does not challenge any of the evidence the ALJ relied on. Rather, Petitioner offers his own interpretation of the evidence to conclude he met the requirements of Listing 1.05B. He cites record evidence that in 2015, two years after getting his prostheses, he had "multiple sores on his residual limbs that will get worse if not taken care of." (AR 479.) But the same provider opined that the sores were the result of using ill-fitting prostheses and that Petitioner "has the ability to do what ever physical activities he chooses, as long as he has appropriate fitting prostheses." (*Id.*) Petitioner also cites the report of consultative examiner Dr. Rex E. Head, M.D., who opined in August 2015 that Petitioner's musculoskeletal examination was abnormal and that he had "red irritated healing ulcers on each stump." (AR 486.) Again, however, the provider opined that Petitioner's "[p]rosthetic and sleeves do not fit. They are

---

[3] The only exceptions are minor: the ALJ cited Exhibit 8F/10 for the report of Melissa Rouse, LPN, but such report appears instead in Exhibit 6F/10. (AR 410.) Additionally, the ALJ cited that Petitioner reported walking one-quarter of a mile a day, but the report was actually that he walked one-quarter of a mile every other day. (AR 477.)

[4] The transcript says "stones," but in context "stones" makes no sense. The Court concludes the transcript should read "stumps" rather than "stones."

loose." (*Id.*) Finally, Petitioner cites a letter from his primary treating physician, Dr. Mark Hernandez, M.D., stating that "[t]he skin irritation experienced by [Petitioner] as a result of an ill fitting devices is common…. The inability to ambulate effectively as defined by the Social Security Administration appropriately describes [Petitioner's] condition." (AR 498.) But Dr. Hernandez also opined that "[w]ith new, proper fitting of bilateral prostheses and rehabilitate ambulation, physical therapy would enable him to become mobility independent and he would very likely be able to rejoin the workforce." (*Id.*) Petitioner himself testified at the October 2015 hearing that his prosthetics worked "good until the prosthetics started to not fit this last January." (AR 54.)

Thus, a common theme in Petitioner's argument is that his limitation in ambulating effectively is due to ill-fitting prostheses. The record reflects that Petitioner lost medical insurance coverage in August 2013, while he was still in physical therapy, and that he has not had insurance since. (AR 84.) He has been using the same prostheses since July 2013, even though the swelling in his stumps has long since faded and his muscles have atrophied. There is no dispute that Petitioner needs new prosthetic legs.

Unfortunately, such a need alone does not support a finding of disability. Respondent points out that the Commissioner issued a statement clarifying Listing 1.05B when it was being finalized:

> the final rules clarify that the inability to use a prosthetic device to ambulate effectively refers to a "medical" inability to use a prosthetic device as a result of stump complications. The inability to afford a prosthetic device does not represent a "medical" inability to use a prosthetic device to ambulate effectively.

66 F.R. 58047-01 (Nov. 19, 2001), *available at* 2001 WL 1453890. In each of the medical records Petitioner cites, the provider opines that Petitioner's limitations are due to ill-fitting prosthetics – which he cannot afford to replace – rather than due to "stump complications," as

required by Listing 1.05B. Nothing in the record suggests Petitioner suffers from a medical inability to use a prosthetic device. There is extensive evidence that he is capable, physically and medically, of using a prosthetic device.

Thus, the ALJ cited, and relied on, substantial evidence in finding that Petitioner does not meet the requirements of Listing 1.05B. Petitioner has not shown otherwise, and his petition must therefore be denied.

## IV. CONCLUSION

Petitioner has not shown that the ALJ's decision is unsupported by substantial evidence or otherwise contains reversible legal error. The ALJ's decision was supported by substantial evidence and Petitioner's arguments do not call into question the sufficiency of that evidence. Accordingly, the ALJ's decision is affirmed.

## V. ORDER

Based on the foregoing, Petitioner's Petition for Review (Dkt. 1) is **DENIED,** the decision of the Commissioner is **AFFIRMED,** and this action is **DISMISSED** in its entirety, with prejudice.

DATED: August 27, 2018

Honorable Ronald E. Bush
Chief U. S. Magistrate Judge